IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| NICOLE WISE, *Plaintiff* | § § § | |
| -vs- | § § | SA-21-CV-00541-XR |
| BEXAR COUNTY, JAVIER SALAZAR, JOHN DOES #1-5, *Defendants* | § § § § | |

## ORDER

On this date, the Court considered Defendant's Motion to Dismiss (ECF No. 5), Plaintiff's Response (ECF No. 7), and Defendant's Reply (ECF No. 8). After careful consideration, the Court **GRANTS** Defendant's motion.

## BACKGROUND

Plaintiff Nicole Wise is the sister of Alexander Wise, deceased. ECF No. 1-1, at 3. Plaintiff brings this suit individually, on behalf of Wise's estate, and on behalf of her father Fred Wise III's estate. *Id.* Wise was arrested in February 2019 for offenses including theft, credit card abuse, and controlled substances violations. ECF No. 5, at 1; ECF No. 1-1, at 4. While being held in pretrial detention, Wise was involved in a violent incident with another inmate and subsequently placed in a cell with Shadrick Buckley. ECF No. 1-1, at 6. Buckley had also been involved in violent incidents at the jail. *Id.* On May 30, 2019, Buckley fatally attacked Wise. *Id.*

Plaintiff has brought this § 1983 lawsuit against Bexar County Adult Detention Center ("BCADC") personnel, in their official and individual capacities, Bexar County, and Sheriff Javier Salazar, in his official and individual capacity. *Id.* at 3–4. Plaintiff asserts three claims. First, she alleges that BCADC personnel and Sheriff Salazar exhibited deliberate indifference to Wise's safety in violation of Wise's Fourteenth Amendment rights by assigning him to a cell with Buckley

1

because Wise was previously affiliated with white supremacist organizations and Buckley was a "violent minority" detainee. *Id.* at 8, 12. Second, Plaintiff claims that BCADC's deliberate indifference violated her and her father's Fourteenth Amendment right to enjoy a familial relationship with her brother. *Id.* at 10. Lastly, Plaintiff asserts that Bexar County itself is liable because Wise's death was caused by a policy, practice, or custom of housing detainees with racist pasts in the same cells as "violent minority" detainees. *Id.* at 11–12.

## DISCUSSION

### I. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. Feb. 3, 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155*, 681 F.3d 614, 617 (5th Cir. 2012)); *see also Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must

contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain recovery") (internal quotation marks and citations omitted).

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions.").

## II. Analysis

Plaintiff first asserts that BCADC personnel violated Wise's Fourteenth Amendment due process rights through their deliberate indifference to a substantial risk of harm. Plaintiff further asserts a claim on behalf of her father's estate and on her own behalf for violations of their right to familial association. Lastly, Plaintiff asserts that these alleged constitutional violations are traceable to a policy, custom, or practice of BCADC which imposes municipal liability under *Monell*. The Court will consider each of these claims in turn.

### A. Plaintiff has not pled facts showing BCADC personnel knew placing Wise in a cell with Buckley was dangerous.

Plaintiff's deliberate indifference claim as to BCADC personnel fails because she has not pled facts showing that the dangers of assigning Wise and Buckley to a shared cell were known to

3

BCADC personnel. Jail officials have a duty under the Fourteenth Amendment to protect a pretrial detainee from violence at the hands of other detainees. *Hare v. City of Corinth*, 74 F.3d 633, 638–39 (5th Cir. 1996) (en banc). When a pretrial detainee alleges a constitutional violation based on an "episodic act or omission of a state jail official," the jail official must have exhibited deliberate indifference to the detainee's safety for liability to attach. *Id.* at 647–48. "A prison official displays deliberate indifference only if he (1) knows that inmates face a substantial risk of serious bodily harm and (2) disregards that risk by failing to take reasonable measures to abate it." *Torres v. Livingston*, 672 F.3d 660, 663 (5th Cir. 2020). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001). Ultimately, deliberate indifference is an extremely high standard to meet. *Torres*, 972 F.3d at 663.

Plaintiff alleges that BCADC's classification entries indicated that: (1) both Wise and Buckley suffered from mental health problems; (2) Buckley had threatened to assault someone; (3) Buckley had assaulted other detainees in the month preceding Defendants' decision to house Wise and Buckley in the same cell; (4) Wise had previously been associated with white supremacist groups; and (5) Buckley, an African-American detainee, was a violent inmate prone to committing assaults. ECF No. 1-1, at 11–12. These facts, Plaintiff alleges, show that "a reasonable correctional officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious." *Id.* at 9.

Defendants assert that these allegations are insufficient because Plaintiff must allege that BCADC personnel knew of a specific threat that Buckley posed to Wise. ECF No. 5, at 7.

4

However, this assertion is contrary to Supreme Court precedent. In *Farmer*, the Court stated that a prison official may not escape liability "by showing that, while he was aware of an obvious substantial risk to inmate safety, he did not know that the complainant was especially likely to assaulted by the specific prisoner who eventually committed the assault." 511 U.S. at 843. The Court specifically rejected the notion that a prison official must have "advance notification of a substantial risk of assault posed by a particular fellow prisoner." *Id.* at 849 n.10; *see also Tarrant v. Velasquez*, 281 F.3d 1280, 1280 (5th Cir. 2001) (per curiam) ("[T]here is no requirement that prison officials be aware of the exact identity of the prospective assailant before Eight Amendment protections attach.").[1] Thus, it is "irrelevant to liability that the officials could not guess beforehand precisely who would attack whom." *Farmer*, 511 U.S. at 844.

However, Plaintiff still must allege facts showing that Defendants were subjectively aware of a substantial risk to Wise's safety. Plaintiff fails to do so. While Plaintiff alleges what information the BCADC classification entries contained, the Complaint does not specifically allege what was known by BCADC personnel prior to placing Wise and Buckley in a shared cell and what was known after Wise's death. Plaintiff simultaneously alleges that BCADC personnel failed to investigate Buckley and Wise's backgrounds prior to assigning them to a shared cell, ECF No. 1-1, at 6, *and* that BCADC personnel "had knowledge of Alexander Wise's and Shandrick Buckley's mental illness and the substantial risk of harm posed by housing them together in the same cell," *id.* at 9. If BCADC personnel failed to investigate Wise and Buckley's backgrounds prior to the cell assignment, this suggests that they could not have subjectively appreciated any risk to Wise's safety, especially where there are no other facts alleged that would make Wise or Buckley's backgrounds obvious to BCADC personnel. *See Leal v. Wiles*, 734 F. App'x 905, 910

---

[1] *Farmer* and *Velasquez* were decided in the context of the Eighth Amendment, but the standard for deliberate indifference under the Fourteenth Amendment for pretrial detainees is the same. *See Hare*, 74 F.3d at 638.

(5th Cir. 2018) (holding that computer entries indicating an inmate's protected status did not on their own demonstrate a prison official's knowledge of such status). And Plaintiff's conclusory allegation that BCADC had knowledge of the risk does not suffice to prevent dismissal. Plaintiff does not allege, for example, that these entries existed prior to the cell assignment, that BCADC personnel responsible for the cell assignment had reviewed these entries prior to the assignment, that Wise complained to any jail officials about Buckley or vice versa, or that Wise and Buckley had previous altercations. *See id.*; *Velasquez*, 281 F.3d at 1280 (stating that where an inmate communicated a threat he had received to prison officials, prison officials were aware of facts from which an inference could be drawn that a substantial risk of harm exists); *Branch v. Jacobs*, 334 F. App'x 648, 649 (5th Cir. 2009) (stating that where one detainee is a "known enemy" of another deliberate indifference may occur by placing the two together). Furthermore, Plaintiff's allegation that "a reasonable corrections officer would have appreciated the high degree of risk involved" in housing Wise and Buckley together is insufficient to plead a claim for deliberate indifference. Negligent or grossly negligent decisions regarding inmate classification do not amount to deliberate indifference. *See Thompson*, 245 F.3d at 459. Thus, Plaintiff has failed to allege facts that show BCADC officials knew of a substantial risk to Wise's safety when they housed him in a cell with Buckley.

### B. Plaintiff has failed to allege facts that Sheriff Salazar was personally involved in the events giving rise to her claim.

Plaintiff further asserts a claim against Sheriff Salazar in his individual capacity for deliberate indifference to Wise's safety. ECF No. 1-1, at 8. However, Plaintiff pleads no facts that show Sheriff Salazar had any personal involvement in the events that form the basis of her Complaint. "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 809 F.2d 381, 382 (5th Cir. 1983). Absent personal involvement, supervisory

liability can only be established if the claimant demonstrates a sufficient causal connection between the supervisor's conduct and the alleged constitutional violation. *Fergason v. Smith*, 189 F.3d 468, 468 (5th Cir. 1999) (per curiam). There are no specific allegations in the Complaint of any actions that Sheriff Salazar took that resulted in Wise being placed in a cell with Buckley. The Complaint alleges that "Sheriff Salazar had actual knowledge of the danger of placing a former white supremacist with an African-American murder suspect in the same cell," ECF No. 1-1, at 8, which Plaintiff argues is sufficient to support an individual capacity claim, ECF No. 7, at 11. This allegation merely suggests that Sheriff Salazar knew, in the abstract, that placing a former white supremacist in a cell with an African-American detainee would be dangerous. It does not, though, establish any personal involvement on the part of Sheriff Salazar, either that he knew about the cell assignment or was involved in placing the two together. Nor does it establish a causal chain between Sheriff Salazar's actions and the resulting cell assignment. Thus, Plaintiff's individual capacity claim against Sheriff Salazar is dismissed.

### C. Plaintiff has failed to allege a violation of a due process right to familial association on behalf of Fred Wise III's estate and her own behalf.

Plaintiff asserts a claim for deprivation of a familial relationship with her brother, Wise, individually and on behalf of the Estate of Fred Wise III. Plaintiff claims the Defendants' conduct "deprived Fred Wise, III and Nicole Wise of their substantive due process right under the Fourteenth Amendment to enjoy their familial relationship with their son/brother, Alexander Wise." ECF No. 1-1, at 10. Plaintiff further alleges that the Defendants' conduct in placing Wise in a cell with Buckley "shocks the conscience." *Id.*

"That the Constitution protects family relationships and a parent's right to the care, custody, control, and management of their children is well-established." *Wooley v. City of Baton Rouge*, 211 F.3d 913, 920–21 (5th Cir. 2000). However, neither the Fifth Circuit nor Supreme

7

Court have held that the constitutional protection of the parent-child relationship extends into a child's adulthood, *i.e.*, that a parent has a constitutional interest in the companionship of their adult children. *See Moreno v. McAllen Indep. Sch. Dist.*, No. 7:15-CV-162, 2016 WL 1258410, at *6 n.83 (S.D. Tex. March 31, 2016) (discussing the circuit split on this issue). Even in circuits where a parent's interest in the companionship of their adult children is a recognized fundamental right, the majority of these courts require that "the alleged constitutional state action must be specifically aimed at interfering with protected aspects of the parent-child relationship." *Tamez v. Manthey*, No. B-07-213, 2008 WL 11451445, at *5 (S.D. Tex. Sept. 18, 2008) (collecting cases). The only circuit that does not require the state to take specific aim at the parent-child relationship for § 1983 liability is the Ninth Circuit. *See, e.g.*, *Ward v. City of San Jose*, 967 F.2d 280, 284 (9th Cir. 1991). While the Fifth Circuit has not ruled directly on the issue, it has stated that "the Supreme Court has protected the parent only when the government directly acts to sever or otherwise affect his or her legal relationship with a child. The Court has never held that governmental action that affects the parental relationship only incidentally . . . is susceptible to challenge for a violation of due process." *Malagon de Fuentes v. Gonzales*, 462 F.3d 498, 505 (5th Cir. 2006) (alteration in original) (quoting *McCurdy v. Dodd*, 352 F.3d 820, 827 (3d Cir. 2003)) (then quoting *Valdivieso Ortiz v. Burgos*, 807 F.2d 6, 8 (1st Cir. 1986)).

Given that the Fifth Circuit has not directly recognized a parent's constitutional interest in the companionship of their adult child, this Court declines to do so now. Additionally, the Fifth Circuit's holding in *Malagon de Fuentes* is instructive. Here, the BCADC actions were not directed at Fred Wise's parental relationship with his son, nor does Plaintiff allege the decision was made to affect the parent-child relationship. While the decision to place Buckley and Wise in a cell together incidentally affected this relationship, such governmental action is not susceptible to a

8

challenge for a violation of due process. *See Malagon de Fuentes*, 462 F.3d at 505. Thus, Plaintiff has failed to state a due process violation on behalf of Fred Wise's estate.

Plaintiff's familial relationship claim on behalf of herself similarly fails. Again, neither the Fifth Circuit nor the Supreme Court have held that individuals have a constitutionally protected interest in the companionship of their siblings. The only circuit to recognize such a right, the Tenth Circuit, further requires that the claimant allege intent on the part of the state to deprive the claimant of their protected relationship. *Trujillo v. Bd. of Cnty. Comm'rs of Sante Fe Cnty.*, 768 F.2d 1186, 1190 (10th Cir. 1985); *see also Ward*, 967 F.2d at 284 (declining to recognize a constitutional interest in the companionship of siblings); *Bell v. City of Milwaukee*, 746 F.2d 1205, 1248 (7th Cir. 1984) (same); *Valdivieso Ortiz*, 807 F.2d at 9 (same). As discussed, Plaintiff has not alleged that BCADC's actions were aimed at her familial relationship with Wise. As such, Plaintiff's due process claim fails.[2]

> **D. Plaintiff has not pled facts that show Bexar County had a policy, custom, or practice of housing "Anglo[] detainees with racist pasts/inclinations in the same cell as violent minority (African-American) detainees."**

In order to hold a municipality liable under § 1983, "the action that is alleged to be unconstitutional must be a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). "To establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009). Thus, "every *Monell* claim requires an underlying constitutional violation." *Hicks-*

---

[2] While claimants may pursue wrongful death claims under § 1983, *see Rhyne v. Harris County*, 973 F.2d 386, 391 (5th Cir. 1992), Plaintiff does not allege such an injury. Her Complaint only refers to a constitutional injury to herself and her father, which as discussed, is not recognized in the Fifth Circuit.

*Fields v. Harris County*, 860 F.3d 803, 808 (5th Cir. 2017). An official policy may include formally adopted policies or practices so "persistent and widespread as to practically have the force of law." *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011)). "To proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.'" *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (quoting *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)). The plaintiff additionally "must establish '[a]ctual or constructive knowledge of such custom' by the municipality or the official who had policy making authority." *Hicks-Fields*, 860 F.3d at 808 (alteration in original) (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)).

First, Plaintiff's *Monell* claim fails because she has failed to allege any underlying constitutional violation. Furthermore, though, Plaintiff's claim fails because she has not alleged the existence of an official policy or unofficial custom or pattern. The Complaint contains different iterations of the custom or policy she asserts imposes municipal liability: (1) a custom of "housing Anglo detainees with racist pasts/inclinations in the same cell as violent minority (African-American) detainees," ECF No. 1-1, at 12; (2) a "policy/or practice of permitting the housing of violent, mentally-ill detainees in the same cell with non-violent detainees," *id.* at 7; (3) a "policy/or practice of permitting the housing of detainees who espouse white supremacy beliefs with a violent, mentally-ill minority," *id.*; and (4) a "policy/or practice of permitting the misclassification of detainees for purposes of housing/cell assignments," *id.* However, to plausibly plead such practices or policies, Plaintiff "must do more than describe the incident that gave rise to his injury." *Peña*, 879 F.3d at 622. While Plaintiff attempts to do so by noting other deaths at Bexar County Jail in 2019, Plaintiff does not allege any facts that connect these incidents to the alleged policies

and practices. ECF No. 1-1, at 7–8. When using prior instances to allege a pattern so "persistent and widespread as to have the force of law," *Hicks-Fields*, 860 F.3d at 808, the prior incidents must be similar and point to the specific violation in question, *Peterson*, 588 F.3d at 851. Plaintiff has not alleged any facts that would demonstrate these deaths occurred under similar circumstances to Wise's, or that they were a result of the alleged practices she complains of. Instead, Plaintiff simply alleges that the inmates died in Bexar County Jail. *See* ECF No. 1-1, at 7–8. Thus, Plaintiff's allegations are insufficient to demonstrate a practice or policy that would give rise to municipal liability under *Monell*.

In the alternative, Plaintiff argues that this incident renders Bexar County liable under the single-incident exception to *Monell*. ECF No. 7, at 10. This exception only relates to failure-to-train claims. *Hutcheson v. Dallas County*, 994 F.3d 477, 482–83 (5th Cir. 2021). Plaintiff does not make any allegations regarding training or lack thereof for BCADC personnel making cell assignments. Consequently, Plaintiff has failed to state a claim under this exception.

Plaintiff's claim against Sheriff Salazar and BCADC personnel in their official capacity are duplicative of her claims against Bexar County. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). Therefore, these claims are also dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 5) is **GRANTED**. Plaintiff's claim individually and on behalf of Fred Wise III's Estate for deprivation of familial association is **DISMISSED WITH PREJUDICE**. Plaintiff's deliberate indifference and *Monell* claims on behalf of Alexander Wise are **DISMISSED WITHOUT PREJUDICE**. However, Plaintiff is granted leave to file an amended complaint within fourteen days of this order.

It is so ORDERED.

SIGNED this 1st day of November, 2021.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE